**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LESLIE HEDGES, individually and on behalf of all others similarly situated, | ) ) | Case No. 14-cv-9858 |
| | ) | |
| Plaintiff, | ) | Hon. Harry D. Leinenweber |
| | ) | |
| v. | ) | Hon. Susan E. Cox |
| | ) | |
| EARTH INC., a Massachusetts corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD**

Joseph J. Siprut
*jsiprut@siprut.com*
**SIPRUT** PC
17 N. State Street
Suite 1600
Chicago, Illinois  60602
Phone: 312.236.0000
Fax: 312.878.1342

*Counsel for Plaintiff
and the Settlement Class*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

PROCEDURAL HISTORY......................................................................................................2

ARGUMENT ...........................................................................................................................3

I.    Class Counsel Overcame Substantial
Defenses And Hurdles To Achieve This Settlement ...................................................3

        A.    Earth Had Significant Defenses Which,
If Successful, Would Have Resulted In Nothing For The Class ....................3

        B.    Class Counsel Performed Substantial Work On Behalf Of The Class ..........5

II.    The Percentage Of The Fund Method Is
Appropriate To Award Attorneys' Fees Here..............................................................6

        A.    The Seventh Circuit Not Only Permits
But Favors The Percentage-Of-Fund Methodology ......................................6

        B.    Class Counsel Requests One Third (33.33%)
Of The Common Benefit Provided To The Class...........................................9

        C.    The Requested Fees Are Also Appropriate Under The Lodestar Method....10

III.    The Requested Incentive Award To The Representative Plaintiff Is Proper............12

CONCLUSION.......................................................................................................................13

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Fox v. Vice*,
131 S. Ct. 2205 (2011) ............................................................................................ 14

*Hensley v. Eckerhart*,
461 U.S. at 433 (1983) ............................................................................................ 13

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*,
743 F.3d 243 (7th Cir. 2014) ............................................................................. 7, 10

*Connolly v. Nat'l Sch. Bus. Serv., Inc.*,
177 F.3d 593 (7th Cir.1999) ................................................................................... 12

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ................................................................................ 11

*Eubank v. Pella Corp.*,
753 F.3d 718 (7th Cir. 2004) .................................................................................... 7

*Florin v. Nationsbank of Georgia, N.A.*,
34 F.3d 560 (7th Cir. 1994) .................................................................................... 10

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ................................................................................ 7, 9

*Gastineau v. Wright*,
592 F.3d 747 (7th Cir. 2010) ............................................................................. 10, 11

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) .................................................................................. 11

*In re Sw. Airlines Voucher Litig.*,
799 F.3d 701 (7th Cir. 2015) .................................................................................... 8

*In re Synthroid Mktg. Litig.*,
264 F.3d 712 (7th Cir. 2001) .................................................................................... 7

*Matter of Cont'l Illinois Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .................................................................................... 7

*Pearson v. NBTY, Inc.*,

772 F.3d 778 (7th Cir. 2014) .................................................................... 1, 7

*Redman v. RadioShack Corp.*,
768 F.3d 622 (7th Cir. 2014) .................................................................... 7

*Skelton v. Gen. Motors Corp.*,
860 F.2d 250 (7th Cir. 1988) .................................................................... 11

**UNITED STATES DISTRICT COURT CASES**
*Abbott v. Lockheed Martin Corp.*,
Case No. 06-cv-701-MJR-DGW, 2015 WL 4398475 (S.D. Ill. July 17, 2015) ...................... 8, 10

*Al And Po Corp. v. Quality Medical Prods., LLC*,
No. 14-cv-1243, Dkt. No. 73 (N.D. Ill Nov. 4, 2015) ................................................. 13

*Beesley v. Int'l Paper Co.*,
No. 3:06-CV-703-DRH-CJP, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ...................... 8

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
00-584-DRH, 2004 WL 287902 (S.D. Ill. Jan. 22, 2004) .......................................... 9

*Bickel v. Sheriff of Whitley Cnty*,
No. 1:08-cv-102-TLS, 2015 WL 1402018 (N.D. Ind. March 26, 2015) ...................... 9

*CE Design Ltd. v. Cy's Crab House N., Inc.*,
No. 07-cv-05456, Dkt. 424 (N.D. Ill. Oct. 27, 2011) ............................................... 9

*CE Design, Ltd. v. Exterior Sys., Inc.*,
No. 07-cv-00066, Dkt. No. 39 (N.D. Ill. Dec. 6, 2007) .......................................... 9

*Chapa IV v. Trugreen, Inc.*,
No. 13-cv-3957, Dkt. No. 50 (N.D. Ill. Jan. 27, 2015) ............................................ 9

*City of Greenville v. Syngenta Crop Prot., Inc.*,
904 F. Supp. 2d 902 (S.D. Ill. 2012) ....................................................................... 8, 10

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
No. 11-CV-4462, 2015 WL 1399367 (N.D. Ill. Mar. 23, 2015) ............................ 7, 9

*Cummings v Sallie Mae*,
No. 12-cv-9984, Dkt. 91 (N.D. Ill. May 30, 2014) .................................................. 9

*Desai v. ADT Sec. Servs., Inc.*,
No. 11-cv-01925, Dkt. 243 (N.D. Ill. June 21, 2013) ............................................. 9

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,

No. 07-cv-05953, Dkt. No. 146 (N.D. Ill. Nov. 1, 2010) ................................................ 9

*Gress v. Premier Healthcare Exchange, Inc.*,
No. 14-cv-501, Dkt. No. 94 (N.D. Ill. Sept. 11, 2015) .................................................. 7

*Hanley v. Fifth Third Bank*,
No. 12-cv-01612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) ............................................... 9

*Hinman v. M & M Rental Ctr., Inc.*,
No. 06-cv-01156, Dkt. No. 225 (N.D. Ill. Oct. 6, 2009) ................................................. 9

*Holtzman v. CCH*,
No. 07-cv-07033, Dkt. 33 (N.D. Ill. Sept. 30, 2009) ..................................................... 9

*In re Bayou Sorrel Class Action*,
6:04-cv-1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) ......................................... 8

*In re Brand Name Prescription Drugs Antitrust Litig.*,
2000 WL 204112, (N.D. Ill. Feb. 9, 2000) .................................................................. 12

*In re Capital One Tel. Consumer Prot. Act Litig.*,
80 F. Supp. 3d 781 (N.D. Ill. 2015) ......................................................................... 7, 8

*In re Cenco, Inc. Sec. Litig.*,
519 F. Supp. 322 (N.D. Ill. 1981) ............................................................................. 12

*In re Dairy Farmers of Am., Inc.*,
No. 09-cv-3690, MDL No. 2031, 2015 WL 753946 (N.D. Ill. Feb. 20, 2015) ............... 9

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) .................................................................................. 13

*In re Zydus Unsolicited Fax Litigation*,
No. 13-cv-3105, Dkt. No. 90 (N.D. Ill Jan. 4, 2016) .................................................. 13

*Kolinek v. Walgreen Co.*,
No. 13 C 4806, 2015 WL 7450759 (N.D. Ill. Nov. 23, 2015) ........................................ 8

*Martin v. Dun & Bradstreet, Inc.*,
No. 12-cv-00215, Dkt. 66 (N.D. Ill. Jan. 16, 2014) ..................................................... 9

*McCue v. MB Fin., Inc.*,
No. 15 CV 988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) .................................. 8, 10

*Meyenburg v. Exxon Mobil Corp.*,
3:05-cv-15-DGW, 2006 WL 2191422 (S.D. Ill. July 31, 2006) ..................................... 9

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*,
No. 08-cv-05959, Dkt. 116 (N.D. Ill. Dec. 21, 2011 ..................................................... 9

*Prena v. BMO Fin. Corp.*,
No. 15 C 09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) .................................... 9

*Saf-TGard Int'l, Inc., v. Seiko Corp. of Am.*,
No. 09-cv-00776, Dkt. No. 100 (N.D. Ill. Jan. 14, 2011) .............................................. 9

*Summers v. UAL Corp. ESOP Comm.*,
03-cv-1537, 2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) ............................................ 9

*Townsend v. Sterling Jewelers, Inc.*,
No. 13-cv-3903, Dkt. No. 58 (N.D. Ill Sept. 15, 2014) ............................................... 13

*Will v. Gen. Dynamics Corp.*,
No. CIV. 06-698-GPM, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ...................... 8, 9

*Zolkos v. Scriptfleet, Inc.*,
No. 12 Civ. 8230 (GF), 2015 WL 4275540 (N.D. Ill. July 13, 2015) .......................... 9

**STATUTES AND FEDERAL RULES**

815 ILCS 505/2 ................................................................................................................ 2

Fed. R. Civ. P. 23 ............................................................................................................. 1

Pursuant to Fed. R. Civ. P. 23 and this Court's October 14, 2015, Preliminary Approval Order (Dkt. No. 43), Plaintiff Leslie Hedges ("Plaintiff"), by her counsel, Siprut PC, respectfully submits the following Motion For Attorneys' Fees, Costs, And Incentive Award (the "Motion").

## **INTRODUCTION**

Class Counsel seeks the Court's approval of an award of attorneys' fees and expenses based on a percentage of the all-in, non-reversionary **$270,000** fund (the "Settlement Fund") achieved through Class Counsel's work. The fee request comprises one-third (33.33%) of the Settlement Fund *after* the Settlement Administrator's costs and Plaintiff's incentive award are first deducted (the "Class Fund"), precisely as the Seventh Circuit dictates,[1] plus unreimbursed litigation costs.

Class Counsel's request is well within both the market price for representation in complex litigation on a contingency-fee basis and the range for attorneys' fees that the Seventh Circuit has indicated is presumptively reasonable. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (stating that in consumer class actions attorneys' fees should not exceed 50% of the money going to class members and their counsel). The fee request is also consistent with attorneys' fees awarded in similar cases, including particularly by courts in this District. The reasonableness of the fee request is further bolstered given the enormous risks and investment required to develop and prosecute a case of this nature, and the excellent result achieved for the Class here. In addition, the requested attorneys' fees ($62,666.67) are *less than half* of Class Counsel's base lodestar ($133,032.50). Hence, the requested fees are also appropriate under the lodestar methodology.

Class Counsel also requests that the Court award Plaintiff a modest, routine incentive award in the amount of $2,000 for her work on behalf of the Class. For these reasons and those discussed below, Plaintiff respectfully requests that her Motion be granted.

---

[1] Unless otherwise stated herein, capitalized terms shall have the same meaning as provided in the Parties' Settlement Agreement, attached as Exhibit 1 to Dkt. No. 63.

## PROCEDURAL HISTORY

On December 9, 2014, Plaintiff filed her class action complaint ("Complaint") against Defendant Earth Inc. ("Earth"). (Dkt. No. 1.) On behalf of herself and proposed classes of United States and Illinois residents who purchased Earth's Exer-Walk shoes (the "Product"), Plaintiff alleged that Earth falsely marketed and advertised the Product as providing certain health benefits, thereby giving rise to claims for unjust enrichment, violation of express warranty, and violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2, *et seq.*

On February 2, 2015, Earth filed a Motion To Dismiss Count I Of Plaintiff's Class Action Complaint under Rule 12(b)(6) on the ground that Plaintiff failed to provide the requisite pre-suit notice before pursuing her warranty claim. (Dkt. Nos. 16, 17.) On March 5, 2015, Plaintiff filed her response in opposition (Dkt. No. 20), and, on March 19, 2015, Earth filed its reply (Dkt. No. 22). On April 21, 2015, this Court denied Earth's motion. (Dkt. No 23.)

After the ruling on Earth's motion to dismiss, Plaintiff and Earth (collectively, the "Parties") began settlement negotiations through telephonic conferences and written correspondence. (*See* Affidavit of Joseph J. Siprut (the "Siprut Aff."), attached hereto as Exhibit 1, ¶5.) On April 22, 2015, the Parties filed an agreed motion for a 90-day extension of time for Earth to answer Plaintiff's Complaint. (Dkt. No. 25). The Parties sought this extension in order devote their resources to attend a mediation and explore settlement opportunities. On April 29, 2015, this Court granted the extension. (Dkt. No. 26.)

On June 9, 2015, the Parties engaged in a full-day of mediation in an effort to settle the claims before the Hon. Morton Denlow (Ret.) in the Chicago, Illinois offices of JAMS (Judicial Arbitration and Mediation Services). Prior to the mediation, the Parties exchanged written statements and documents supporting their respective positions. After nearly *eleven* hours of arms-

length negotiations, the Parties were successful in reaching an agreement on the material terms of a settlement structure. (Siprut Aff. ¶6.)

The Parties then spent several more weeks exchanging drafts of a final, written settlement agreement. (Siprut Aff. ¶7.) After many exchanges of drafts and edits, the Parties were finally able to agree to the form and content of a settlement agreement in September 2015. (Dkt. No. 38-1.)

On October 5, 2015, Plaintiff filed her Motion For Preliminary Approval Of Class Action Settlement (the "Preliminary Approval Motion"). (Dkt. No. 38.) On October 14, 2015, this Court entered an order granting the Preliminary Approval Motion (the "Preliminary Approval Order). (Dkt. No. 43.) On January 6, 2016, the Court modified the Preliminary Approval Order to allow more time for notice to be provided to the Class. (Dkt. No. 48.) The Final Approval Hearing is scheduled for June 21, 2016, at 9:00 a.m. (*Id.*)

## ARGUMENT

### I. Class Counsel Overcame Substantial Defenses And Hurdles To Achieve This Settlement.

#### A. Earth Had Significant Defenses Which, If Successful, Would Have Resulted In Nothing For The Class.

Class Counsel expended substantial effort in achieving this Settlement on behalf of Class Members. That is not mere rhetoric. The amount of work necessary to settle this case at this level, and the *risk* Counsel had to bear in order to do so, can only be appreciated in context given Earth's defenses.

Plaintiff alleges that over the past five years, a wide swath of toning shoe manufacturers have pushed marketing campaigns claiming that their negative-heel shoe products provide various health benefits such as improved posture, strengthened core muscles, reduced joint stress, and increased calories burned. These statements were false. Multiple independent studies published as

early as 2004 establish that, at best, there is no evidence to support these representations. And worse, there is evidence that the negative-heel, or "toning shoe," design actually causes injuries.

Since 2010, many of the largest toning shoe manufacturers have been sued in class action lawsuits, including Reebok, New Balance, Skechers, and FitFlop. All of these cases settled on a class-wide basis. The Federal Trade Commission also initiated direct litigation against Reebok and Skechers on this same basis.

Plaintiff contends that Earth is no different. Since releasing its Product, Earth has consistently represented that the Product will "improve posture," "strengthen core muscles," "reduce joint stress," and "maximiz[e] calorie burn" by simply wearing the product. Moreover, Earth has touted that its Product "helps burn 4x more fat than an ordinary sneaker." (Compl. ¶¶19, 21.) Earth's statements, however, were false, misleading, and deceptive advertisements meant to induce consumers to purchase such Products based on the purported health benefits. Plaintiff also asserts that: (1) "[t]here is as yet no solid independent evidence that proves it is possible to strengthen specific musculature by wearing a particular type of shoe,"; (2) the negative heel shoe is the "latest foray of quick fix fitness gimmicks" and "any change in your footwear or posture will elicit [an initial feeling of increased muscle activity] until your body adapts and realigns itself; and (3) "[a] growing number of doctors are warning that toning shoes don't deliver on their marketing promises and could cause injuries by, among other things, changing a person's gait, or way of walking." (Compl. ¶¶25-26, 29.)

Earth denies liability and contends that it has a number of affirmative defenses that would defeat Plaintiff's claims on both substantive and procedural grounds. For instance, Earth contends that Plaintiff could not withstand a motion for summary judgment because she cannot prove that Earth's advertising was false or deceptive. Earth points to studies reported in the Journal of the

American Podiatric Medicine Association and studies specifically examining Earth's Product, which found health benefits to wearing Earth's Product and other negative-heeled shoes. Based on these studies, Earth asserts that its Product does in fact provide health benefits, and hence Earth's advertising did not deceive consumers. Earth also contends that Plaintiff would have difficultly certifying a class on a contested basis for a number of reasons including: (1) a nationwide class is not appropriate under choice of law principles; (2) the proposed class definition is too vague and overly broad; (3) not everyone purchased Earth's Product to obtain the claimed health benefits, because the Product has many possible uses; (4) Earth's advertising provided numerous reasons to purchase the Product other than the claims challenged in this lawsuit; and (5) Plaintiff cannot show damages, nor could harm be shown on a class-wide basis without individualized proof for each class member relating to the different retail prices paid by each consumer, and the unique value, if any, each consumer placed on the challenged advertising.

Though Class Counsel has maintained that these defenses can and would be overcome on a contested basis, the risk presented by these defenses is obvious. The Settlement balances the risks faced by the Class, Class Counsel, and Earth.

## B. Class Counsel Performed Substantial Work On Behalf Of The Class.

The hours Class Counsel expended in battling Earth total 293.5 hours (Siprut Aff. ¶19) and include the following:

- **Pre-Complaint Factual Investigation**. Class Counsel began conducting a factual and legal investigation in 2014, starting with an analysis of the representations made by Earth.

- **Legal Investigation**. With the initial factual investigation ongoing, Class Counsel investigated the litigation landscape. In addition, Class Counsel researched: (1) choice of law issues; (2) the appropriate venue and potentially applicable statutes, regulations, and common law claims under Illinois and various other states' laws; and (3) the elements and potential defenses for each of the proposed claims. Once the initial factual and legal research had been completed, Class Counsel began: (1) formulating the claims; (2) drafting,

preparing, and filing the Complaint; and (3) engaging in correspondence with clients regarding the complaint and the case in general.

- **Motion Practice and Discovery**. After appearing in this case, Earth filed a motion to dismiss Count I of Plaintiff's Complaint. Plaintiff submitted her opposition in response, and the Court denied Earth's motion. Shortly thereafter, Class Counsel and Earth engaged in a full-day of private mediation. Prior to the mediation, the Parties exchanged informal discovery on the nature of their claims and defenses. For example, Earth provided information on why its representations were not misleading. The Parties also exchanged robust settlement position statements, which provided detailed analyses of issues surrounding the nature of the representations and class certification. Class Counsel significantly researched class certification issues (and potential Earth defenses to class certification), given that class certification would have been the "make or break" point for a case of this nature.

- **Interactions With Clients and the Members of the Class**. Class Counsel has received various inquiries from Settlement Class Members which has required Class Counsel to take the time to communicate with each individual, collect data, and keep consumers apprised of any progress in the case.

- **Settlement**. Class Counsel conducted substantial and protracted settlement negotiations with Earth. Class Counsel researched and drafted memoranda regarding potential settlement structures, analyzed settlements in similar cases, reviewed materials obtained through settlement discussions and confirmatory discovery, and regularly engaged in telephonic conferences and email exchanges. Class Counsel also engaged in a full day of mediation with Retired Judge Morton Denlow, along with numerous e-mail exchanges with counsel of record. After nearly four months of negotiations and only with Judge Denlow's assistance were the Parties able to reach the Settlement here which provides immediate and direct benefits to the Class. In addition, Class Counsel spent several more weeks: (a) drafting the written settlement agreement; (b) working with the Settlement Administrator to develop a reasonable notice plan; and (c) drafting the class action settlement notice materials.

## II. The Percentage Of The Fund Method Is Appropriate To Award Attorneys' Fees Here.

### A. The Seventh Circuit Not Only Permits But Favors The Percentage-Of-Fund Methodology.

The Seventh Circuit just recently made clear that when the Settlement constitutes a common fund, as here, using the lodestar method to award fees is "not warranted." *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *5 (N.D. Ill. Mar.

23, 2015) (St. Eve, J.) (citing *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014)); *Gress v. Premier Healthcare Exchange, Inc.*, No. 14-cv-501, Dkt. No. 94 (N.D. Ill. Sept. 11, 2015) (granting final approval and awarding fees under the percentage method, without requiring a lodestar cross-check).

The Seventh Circuit has strongly (and historically) endorsed the percentage of the recovery benefit method as the best means for calculating attorneys' fees in common fund cases.[2] *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*") (instructing district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time") (collecting cases).[3]

---

[2] The Seventh Circuit's decisions in *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2004), *Redman v. RadioShack Corp.*, 768 F.3d 622 (7th Cir. 2014), and *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014) are not to the contrary. In each of those cases, the courts endorsed basing attorneys' fees off a percentage of the money going to them and the class, so long as the percentage was no more than 50%. *E.g.*, *NBTY*, 772 F.3d 778, 781 (7th Cir. 2014) (reversing attorneys' fee award where it represented 69% of the money going to the class and their counsel); *RadioShack*, 768 F.3d at 622 (reversing fee award where class counsel sought over 55% of the money going to the class and their counsel); *Pella*, 753 F.3d at 726 (reversing fee award where counsel sought 56% of the money going to the class and their counsel).

[3] *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund . . . in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis.") (internal citations omitted); *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client. . . . [I]n large commercial litigation with prospects of multimillion dollar recoveries the percentage frequently is tapered—it might be 33 percent of the first million, 25 percent of the next million, and so on down."); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (percentage of the fund method is "more likely to yield an accurate approximation of the market rate"); *McCue v. MB Fin., Inc.*, No. 15 CV 988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) ("Awarding attorneys' fees through a percentage of a common fund is consistent with the need to incentivize lawyers to resolve cases early and to avoid over-litigating them in order to recover a larger fee."); *Beesley v. Int'l Paper Co.*, No. 3:06-CV-703-DRH-CJP, 2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014) ("When determining a reasonable fee, the Seventh Circuit Court of Appeals uses the percentage basis rather than a lodestar or other basis."); *Will v. Gen. Dynamics Corp.*, No. CIV. 06-698-GPM, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive."). "Given the issues likely to arise in computing a lodestar, courts across the country, both federal and state, are retreating from a lodestar analysis in favor of setting common benefit fees at a percentage of the benefit secured . . . ." *In re Bayou Sorrel Class Action*, 6:04-cv-1101, 2006 WL 3230771, at *3 (W.D. La. Oct. 31, 2006) (collecting cases).

This long-standing maxim was reaffirmed by the Seventh Circuit just a few months ago. *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 708 (7th Cir. 2015) ("Under the 'common fund' doctrine, an attorney who recovers a common fund for the benefit of a class is entitled to a reasonable portion" of the fund) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

District courts throughout the Seventh Circuit (but particularly here in the Northern District) have consistently and repeatedly approved fee awards in class settlements using a percentage of the fund achieved. *E.g.*, *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 809 (N.D. Ill. 2015) (Holderman, J.) (awarding tiered percentages as attorneys' fees); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 908 (S.D. Ill. 2012) ("[A] contingent fee of one-third of any recovery after the reimbursement of costs and expenses reflects the market price for legal services for a case of similar risk."); *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2015 WL 7450759, at *17 (N.D. Ill. Nov. 23, 2015) (Kennelly, J.) (awarding 36% of the settlement as attorneys' fees); *McCue v. MB Fin., Inc.*, No. 15 CV 988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) (Coleman, J.) (awarding one-third of the settlement fund in attorneys' fees, plus costs of litigation); *Abbott v. Lockheed Martin Corp.*, Case No. 06-cv-701-MJR-DGW, 2015 WL 4398475, at *2 (S.D. Ill. July 17, 2015) (awarding 33.33% of the fund plus costs); *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230 (GF), 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (Feinerman, J.) (awarding 33.33% of the fund plus expenses); *Prena v. BMO Fin. Corp.*, No. 15 C 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) (Chang, J.) (awarding 33.5% of the fund after deducting notice expenses); *Bickel v. Sheriff of Whitley Cnty*, No. 1:08-cv-102-TLS, 2015 WL 1402018, at *6 (N.D. Ind. March 26, 2015) (awarding 43.7% of the fund); *Craftwood*, 2015 WL 1399367, at *5 (awarding tiered percentages as attorneys' fees) *mot. to amend judgment denied*, 2015 WL 2147679 (May 6, 2015); *In re Dairy Farmers of Am., Inc.*, No.

09-cv-3690, MDL No. 2031, 2015 WL 753946, at *16 (N.D. Ill. Feb. 20, 2015) (Dow, J.)

(awarding 33.33% of the fund); *Chapa IV v. Trugreen, Inc.*, No. 13-cv-3957, Dkt. No. 50 (N.D.

Ill. Jan. 27, 2015) (Leinenweber, J.) (awarding one-third of the settlement fund as attorneys' fees).[4]

### B. Class Counsel Requests One-Third (33.33%) Of The Common Benefit Provided To The Class.

Subject to being reviewed for approval, the Settlement Administrator has already received

33,551 claims. (Siprut Aff. ¶28.) This represents a 38% claims-rate of the total units sold, which

is above Class Counsel's expectations and the "predictions" offered at the preliminary approval

hearing before this Court.

Because the claims process is ongoing, however, the Settlement Administrator's costs are

not yet finalized. Based on current projections, the Administrator's costs will be approximately

---

[4] *See also Martin v. Dun & Bradstreet, Inc.*, No. 12-cv-00215, Dkt. 66 (N.D. Ill. Jan. 16, 2014) (Martin, J.) (awarding one-third fee payment of distributed fund); *Cummings v. Sallie Mae*, No. 12-cv-9984, Dkt. 91 (N.D. Ill. May 30, 2014) (Gottschall, J.) (awarding one-third of the common fund for fees); *Hanley v. Fifth Third Bank*, No. 12-cv-01612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) (Castillo, J.) (awarding one-third of common fund); *Desai v. ADT Sec. Servs., Inc.*, No. 11-cv-01925, Dkt. 243 (N.D. Ill. June 21, 2013) (Bucklo, J.) (approving payment of one-third of common fund); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-cv-05959, Dkt. 116 (N.D. Ill. Dec. 21, 2011 (Kennelly, J.) (approving one-third of the settlement fund plus expenses); *CE Design Ltd. v. Cy's Crab House N., Inc.*, No. 07-cv-05456, Dkt. 424 (N.D. Ill. Oct. 27, 2011) (Kennelly, J.) (same); *Saf-TGard Int'l, Inc., v. Seiko Corp. of Am.*, No. 09-cv-00776, Dkt. No. 100 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (same); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-cv-05953, Dkt. No. 146 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (same); *Hinman v. M & M Rental Ctr., Inc.*, No. 06-cv-01156, Dkt. No. 225 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (same); *Holtzman v. CCH*, No. 07-cv07033, Dkt. 33 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (same); *CE Design, Ltd. v. Exterior Sys., Inc.*, No. 07-cv-00066, Dkt. No. 39 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (same); *Will v. Gen. Dynamics Corp.*, 06-698-GPM, 2010 WL 4818174, at *2 (S.D. Ill. Nov. 22, 2010) (stating that, where the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, "the normal rate of compensation in the market" is "33.33% of the common fund recovered"); *Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 00-584-DRH, 2004 WL 287902, at *2 (S.D. Ill. Jan. 22, 2004) (finding that 29% of the gross settlement is a reasonable fee award); *Gaskill*, 160 F.3d at 362-3 (noting that typical contingency fees are between 33% and 40% and that "[s]ome courts have suggested 25% as a benchmark figure for a contingent-fee award in a class action"); *Meyenburg v. Exxon Mobil Corp.*, 3:05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation."); *Summers v. UAL Corp. ESOP Comm.*, 03-cv-1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005) (finding that attorneys' fees amounting to 16% of the gross settlement "is clearly within the range of what has been deemed reasonable by the Seventh Circuit").

$80,000. At that number, the $270,000 Settlement Fund will thus net $188,000 after notice and administration expenses and the $2,000 incentive award to Plaintiff. Plaintiff respectfully requests that the Court award Class Counsel attorneys' fees in the amount of one-third of that net figure (well within Seventh Circuit guidelines, as discussed above), or $62,666.67. Plaintiff additionally seeks the reimbursement of out-of-pocket litigation costs, in the amount of $6,896.79. (Siprut Aff. ¶20.) *See City of Greenville*, 904 F. Supp. 2d at 908 (awarding fees *and costs*); *McCue*, 2015 WL 4522564, at *3 (same); *Abbott*, 2015 WL 4398475, at *2 (same).

### C. The Requested Fees Are Also Appropriate Under the Lodestar Method.

A lodestar calculation supports the request, and underscores the reasonableness of the Parties' compromise on this issue. *See Americana Art China*, 743 F.3d at 247-48 ("[W]e are of the opinion that both the lodestar approach and the percentage approach may be appropriate in determining attorney's fee awards, depending on the circumstances . . . The decision whether to use a percentage method or a lodestar method remains in the discretion of the district court.") (quoting *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994)).

To determine the reasonableness of attorneys' fees under the lodestar method, the first step is to calculate a base lodestar amount by "multiplying a reasonable hourly rate by the number of hours reasonably expended." *Gastineau v. Wright,* 592 F.3d 747, 748 (7th Cir. 2010) (citing *Hensley v. Eckerhart*, 461 U.S. at 433-37 (1983)). Here, the time summary included in the Siprut Affidavit accurately reflects the extensive work Class Counsel performed—and expects to perform to see the case through to completion—in this novel and complex litigation. To date, five attorneys at Class Counsel's firm have spent 293.5 hours collectively in prosecuting this action for a total lodestar amount of $133,032.50 (Siprut Aff. ¶19.) As detailed in the Affidavit of Joseph Siprut, the hourly rates utilized by Siprut PC's attorneys and legal staff: (1) have been previously approved

by courts throughout the country and this district; (2) are the same hourly rates charged by Siprut PC to outside clients; and (3) are demonstrably *lower* than the median hourly rate in the legal market based on the hourly rates charged in other cases by attorneys with similar experience, skill and reputation. (*Id.* ¶¶21-26.)

The time summary provided in the Siprut Affidavit is sufficient to form the basis of the fee request. The Supreme Court has explicitly held that

> trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation.

*Fox v. Vice,* 131 S. Ct. 2205, 2216 (2011) (internal quotations omitted). Class Counsel's Affidavit and the time records summarized therein are thus more than sufficient for establishing lodestar figures.

The base lodestar is typically adjusted using a multiplier to take into account various factors in the litigation that affect the reasonableness of the requested fees. *See, e.g.*, *Cook v. Niedert,* 142 F.3d 1004, 1015 (7th Cir. 1998); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 255 (7th Cir. 1988). These factors include "the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." *Gastineau*, 592 F.3d at 748. When applying a multiplier to the base lodestar amount, courts should also consider the risk plaintiff's counsel assumes in recovering nothing. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975-76 (7th Cir. 1991) (remanding case for recalculation of attorneys' fees because the trial court failed to award a risk multiplier). Multipliers can range from 2 to 4 or even higher. *See In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) (applying a lodestar multiplier of 4 to lead counsel's lodestar and 2 to other counsels' lodestar). "The standard is whether the fees are reasonable in relation to the

difficulty, stakes, and outcome of the case." *Id.* (citing *Connolly v. Nat'l Sch. Bus. Serv., Inc.*, 177 F.3d 593, 597 (7th Cir.1999)).

In this case, as detailed above, Class Counsel's base lodestar is $133,032.50. However, Class Counsel is only seeking $62,666.67 in attorneys' fees, which is ***53% less*** than Class Counsel's base lodestar.[5] Because courts routinely use positive multipliers in awarding fees, awarding one-third of the Class Fund – with a ***negative*** multiplier – is certainly within the range of reasonableness considering the risk of non-recovery and the excellent result achieved. *See Harman*, 945 F.2d at 975 (noting "[a risk] multiplier is, within the court's discretion, appropriate when counsel assume a risk of non-payment in taking a suit" and "[m]ultipliers anywhere between one and four . . . have been approved"); *In re Cenco, Inc. Sec. Litig.*, 519 F. Supp. at 327 (applying a lodestar multiplier of 4 to lead counsel's lodestar and 2 to other counsels' lodestar); *In re Brand Name Prescription Drugs Antitrust Litig.*, 2000 WL 204112, (N.D. Ill. Feb. 9, 2000) (awarding $91 million above lodestar and noting that "[an] award of more than two times the lodestar calculation is believed to be fair and just in these circumstances").

Accordingly, the requested fee award of one-third of the Class Fund (approximately $62,666.67) and attorney costs of $6,896.79 is reasonable.

## III.    The Requested Incentive Award To The Representative Plaintiff Is Proper.

Finally, Plaintiff requests that the named plaintiff and class representative receive an incentive award of $2,000, which was the result of a negotiated compromise. The rationale for awarding incentive payments to named plaintiffs is that they should be compensated for the expense or risk they have incurred in conferring a benefit on other members of the class. *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D. Mass. 2005). Incentive awards are appropriate "to

---

[5] That figure was calculated by dividing $62, 666.67 by $133,032.50.

encourage or induce an individual to participate" in a class action law suit. *Id.* Moreover, and similar to the fee request, comparisons to incentive awards in other similar class action settlements further underscore that this amount is reasonable and fair. *In re Zydus Unsolicited Fax Litig.*, No. 13-cv-3105, Dkt. No. 90 (N.D. Ill Jan. 4, 2016) (awarding $10,000 as an incentive award); *Al And Po Corp. v. Quality Medical Prods., LLC*, No. 14-cv-1243, Dkt. No. 73 (N.D. Ill Nov. 4, 2015) (awarding $5,000 as an incentive award); *Townsend v. Sterling Jewelers, Inc.*, No. 13-cv-3903, Dkt. No. 58 (N.D. Ill Sept. 15, 2014) (awarding $2,000 as an incentive award).

In this case, Plaintiff has contributed substantially to this litigation and has invested considerable time, at her own expense, to do so. Plaintiff aided our initial investigation of the claims, and worked to provide a variety of documentation (initially at our request, and then additionally as the Parties exchanged information) to support the asserted claims on behalf of the Class. Plaintiff also spent substantial time with us on the phone discussing the case and its progress, and particularly the scope of the settlement eventually achieved. (Siprut Aff. ¶3.)

## **CONCLUSION**

For the reasons set forth above, Class Counsel respectfully suggests that attorneys' fees in the amount of one-third of the Class Fund (approximately $62,666.67), the payment of costs in the amount of $6,986.79, and an incentive award to the class representative Plaintiff in the amount of $2,000 are fair, appropriate, and reasonable, and respectfully requests the Court enter an Order approving these amounts.

Dated: May 5, 2016

Respectfully submitted,

By: *s/ Joseph J. Siprut*

Joseph J. Siprut
*jsiprut@siprut.com*
**SIPRUT PC**
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.878.1342

***Counsel for Plaintiff***
***and the Settlement Class***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Motion For Attorneys' Fees, Costs And Incentive Award** was filed this 5th day of May 2016 via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.


                                                                    */s/ Joseph J. Siprut*
                                                        _____


4848-4933-9440, V. 1